Michael W. Kopp (SBN 63944)
Jay W. Connolly (*pro hac vice to be filed*)
Joseph J. Orzano (*pro hac vice to be filed*)
SEYFARTH SHAW LLP
400 Capitol Mall, Suite 2350
Sacramento, CA 95814-4428
(916) 448-0159

Attorneys for Defendant
WHOLE FOODS MARKET GROUP, INC.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| LOIS BRYANT, individually, and on behalf of all others similarly situated in Missouri,<br><br>Plaintiff,<br><br>v.<br><br>WHOLE FOODS MARKET GROUP, INC.,<br><br>Defendant. | Case No.: _____<br><br><br>**NOTICE OF REMOVAL**<br><br><br>JURY TRIAL DEMANDED |

Defendant Whole Foods Market Group, Inc. ("Defendant"), by and through its attorneys, Seyfarth Shaw LLP, and pursuant to 28 U.S.C. §§ 1331, 1332 and 1441, hereby files this Notice of Removal[1] with respect to the above-captioned case, which was filed and currently is pending in the 22nd Judicial Circuit Court of the City of St. Louis, State of Missouri. In support of this Notice of Removal, Defendant states as follows:

---

[1] The arguments raised in this Notice of Removal are for the purposes of removal only. By the assertion or omission of any argument or reliance upon any law, Defendant does not intend to waive and specifically reserves its right to assert any defenses and/or objections which it may be entitled to assert through dispositive motion or otherwise.

## Timeliness of Removal

1.      On April 23, 2015, Plaintiff LOIS BRYANT ("Plaintiff") filed a Petition and Jury Demand ("Complaint") against Defendant in the 22nd Judicial Circuit Court of the City of St. Louis, State of Missouri.  The lawsuit is recorded on that court's docket as 1522-CC00884. There are no other parties named in the Complaint at the time of filing this removal.

2.      On April 24, 2015, Plaintiff mailed a copy of the Complaint, summons, and a Notice and Acknowledgement for Service by Mail to Defendant's agent for service of process in Missouri pursuant to Missouri Supreme Court Rule 54.16.  On May 26, 2015, Defendant timely returned and filed an Acknowledgement of Receipt of Summons and Petition, thereby effecting service under Missouri Supreme Court Rule 54.16 on that date.

3.      Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of Plaintiff's Summons and Complaint and Defendant's Acknowledgement of Receipt of Summons and Petition, which constitutes "all summons, pleadings, and orders" served upon Defendant in the 22nd Judicial Circuit Court of the City of St. Louis, State of Missouri action, are attached hereto as **Exhibit A**.

4.      Because Defendant has filed this Notice of Removal within thirty (30) days of service, this Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b).

## Basis for Removal

5.      The basis for removal is diversity jurisdiction under the Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), and federal-question jurisdiction under 28 U.S.C. § 1331.

### *Diversity Jurisdiction Under CAFA*

6.      This putative class action satisfies all the jurisdictional requirements under CAFA based on the allegations in the Complaint.  Specifically:  (1) the proposed class consists of 100 or

more members; (2) the parties are minimally diverse; and (3) and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (5)(B).

7.      *First*, CAFA requires that the putative class consist of at least 100 persons.  28 U.S.C. § 1332(d)(5).  In the Complaint, Plaintiff purports to bring this action on behalf of "all persons in Missouri who purchased Gluten Free All-Natural Nutmeal Raisin Cookies in the five years preceding the filing of this Petition…."  Compl. ¶ 17.  Plaintiff alleges on the face of the Complaint that "the Class consists of hundreds or thousands of purchasers."  Compl. ¶ 29. Therefore, by Plaintiff's own allegations, the putative class exceeds at least 100 persons.

8.      *Second*, CAFA requires that the parties be minimally diverse; that is, at least one putative class member must be a citizen of a different state than at least one defendant.  28 U.S.C. § 1332(d)(2).  The term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.  28 U.S.C. § 1332(d)(1)(D).  In the Complaint, Plaintiff alleges that she is a resident of Missouri.  Compl. ¶ 3.  Therefore, Plaintiff is a citizen of Missouri.  Defendant is a Delaware Corporation with its principle place of business in Texas.  Therefore, Defendant is deemed a citizen of Delaware and Texas.  Plaintiff alleges in the Complaint that Defendant is a Texas corporation with its principle place of business in Texas.  Even if that were true, it would be deemed a citizen of Texas.  Either way, Plaintiff and Defendant are citizens of different states and the parties satisfy the minimal diversity requirement.

9.      *Third*, to confer diversity jurisdiction under CAFA, the amount in controversy must exceed the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  "[T]he District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and

determine whether the resulting sum exceeds $5 million.  If so, there is jurisdiction and the court may proceed with the case." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013).  It is fundamental that Plaintiff is master of her complaint.  *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009); *Stafford v. Whole Foods Market California, Inc.*, 2014 WL 4755988 (E.D. Ark. Sept. 24, 2014).  And "the amount in controversy requirement may be satisfied simply by the allegations in the complaint."  *Hug v. American Traffic* Solutions, 21014 WL 1689303, at *1 (E.D. Mo. Apr. 29, 2014).

10.     Plaintiff alleges on the face of the Complaint that the amount in controversy is "less than $75,000 per Plaintiff and Class Member individually" and that "Plaintiff's claim[] is typical of all class members with respect to the value of the claim."  Compl.  ¶ 6.  Therefore, based on the allegations of the Complaint, Plaintiff specifically pleads a sum certain that the amount in controversy for each individual class member is $74,999.  *See Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 960 (8th Cir. 2014) (holding that the defendant met its burden as to the CAFA amount in controversy jurisdictional threshold through the plaintiffs' allegations of "a nationwide class consisting of at least 50,000 members, who overpaid for Internet services" because "plaintiffs sought to recover up to $50,000 in damages per class member," based on which "a jury might conclude that the class suffered damages of more than $5 million dollars, even if the individual class members' monthly overpayment was minimal"); *Raye v. Employer's Ins. of Wausau*, 345 F. Supp. 2d 1313, 1316-1317 (S.D. Ala. 2004) ("[t]he complaint expressly articulates the plaintiffs desire to recover $75,000.00 in compensatory and punitive damages" where plaintiff alleged that he "be awarded damages . . . not to exceed Seventy-Five Thousand and No/100 ($75,000.00) Dollars."); *Stafford*, 2014 WL 4755988, at *3 (treating allegation that

"[n]o Class Member has a claim which exceeds $74,999.00" as a sum certain for purposes of analysis of amount in controversy under CAFA).[2]

11.     Plaintiff also alleges that "the Class consists of hundreds or thousands of purchasers." Compl. ¶ 29.

12.     Therefore, multiplying the alleged sum certain of $74,999 per class member by just 200 class members, the minimum alleged number of class members, the amount placed in controversy for purposes of CAFA is $14,999,800, an amount well in excess of the $5 million jurisdictional limit under CAFA. Indeed, even just 0.7% of Plaintiff's alleged sum certain, $524.99, when multiplied by the upper bound number of alleged class members, 9,999, is $5,249,405.01.

13.     Plaintiff cannot escape CAFA removal by simply alleging that "[t]he amount in controversy, however, … is less than $5,000,000 in the aggregate." Compl. ¶ 6. Such stipulations may *not* prevent removal under CAFA. *E.g., Stafford*, 2014 WL 475988, at *3 (relying on *Grawitch* to conclude that "[a]lthough the complaint alleges damages do not exceed

---

[2] Elsewhere in the Complaint, Plaintiff seeks "damages to Plaintiff and the proposed Class in an amount which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000…." Compl. Prayer. Attorneys' fees are included in the determination of the amount in controversy. *See Hutchins v. Southwestern Bell Telephone Co., Inc.*, 2013 WL 6068397, *3 (E.D. Mo. Nov. 18, 2013 ("the Court must consider [for the amount in controversy] … reasonable attorneys' fees, which are generally awarded to a prevailing plaintiff in a MHRA [Missouri Merchandising Practices Act] action."). Costs are not included in the amount in controversy. 28 U.S.C. § 1332(d)(2). But any amounts of each plaintiff's claim attributable to taxable costs would be *de minimis*. *Gray v. FedEx Ground Package System, Inc.*, 2014 WL 4386739, *2 (E.D. Mo. Sept. 5, 2014) (explaining 28 U.S.C. § 1920 "imposes rigid controls on cost-shifting in federal courts" and awarding, after eight years of litigation involving eleven prevailing plaintiffs, less than three-thousand dollars in taxable costs per plaintiff). Therefore, even based on the Prayer, Plaintiff specifically pleads a sum certain that the amount in controversy for each individual class member is $74,999 less *de minimis* costs. Because Plaintiff's allegations establish an amount in controversy substantially in excess of the jurisdictional amount, even factoring in an exclusion of *de minimis* costs the amount in controversy is met.

the $5,000,000 amount in controversy threshold, by alleging damages up to $74,999.00 per class member, Stafford has placed that amount in controversy for each class member.").

14.    Because the CAFA jurisdictional requirements are all met, this case is properly removable to this Court under 28 U.S.C. § 1332(d).

### Federal Question Jurisdiction 28 U.S.C. § 1331

15.    In addition to diversity jurisdiction under CAFA, this case is also removable based upon federal question jurisdiction.  Under 28 U.S.C. § 1331, the district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

16.    A claim may arise under federal law in either of two ways. In many cases, "federal-question jurisdiction is invoked . . . by plaintiffs pleading a cause of action created by federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  In other cases, although the plaintiff's causes of action are nominally created by state law, "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Id.*  This second form of federal-question jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* "Federal jurisdiction may be found from a complaint if adjudication of a state claim would turn on a federal constitutional or other important federal question, even where only state law issues have been pled." *Pet Quarters, Inc. v. Depository Trust and Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009). "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Id.* 34.

17.     When evaluating whether a federal statute creates a substantial federal interest giving rise to federal-question jurisdiction over claims pleaded under state law, the Supreme Court has "disclaimed the adoption of any bright-line rule." *Id.* at 317. "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Pet Quarters*, 559 F.3d at 779; *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833, 841 (11th Cir. 2013). "Although Plaintiffs Complaint does not present a federal issue on its face, that is not the end of the Court's inquiry. The Court must determine if Plaintiffs 'right to relief necessarily depends on the resolution of a disputed and substantial question of federal law.'" *Davis v. J.P. Morgan Chase, N.A.*, 2013 WL 6708765, at *2 (E.D. Mo. Dec. 18, 2013) (denying remand on grounds of substantial federal question jurisdiction and finding that the plaintiffs complaint required interpretation of the federal Truth in Lending Act).

18.     Plaintiff alleges in the Complaint that she, and a statewide class of persons she seeks to represent, were injured as a result of a false and misleading representation on a food label which misled Plaintiff about the true nature of the product's ingredients. *See, e.g.*, Compl. ¶ 33. Specifically, Plaintiff alleges that the use of the term "evaporated cane juice" in the ingredient list on the label of a cookie misled consumers into purchasing the cookie believing it did not contain as much sugar as it in fact contains. *See* Compl. ¶¶ 14, 21, 33. Plaintiff asserts purportedly state law claims for violation of Missouri's Merchandising Practices Act and unjust enrichment. Compl. ¶¶ 30-40.

19.     While Plaintiff asserts purported state law causes of action, the Complaint is replete with citations to federal statutes, case law, legislative history, regulations and agency

administrative materials. Compl. ¶¶ 12-20. Both of Plaintiff's purported state law causes of action are based on the allegations that the challenged cookie was "misbranded" as that term is defined under section 403(a) of the FDCA, 21 U.S.C. § 343(a). Compl. ¶ 14. Plaintiff claims the cookie was misbranded because an ingredient was not identified on the label using its common or usual name as required by 21 C.F.R. § 101.4(a)(1), 21 C.F.R. § 102.5(d), and 21 C.F.R. § 102.5(a). Compl. ¶¶ 16-18. And Plaintiff contends evaporated cane juice is not the common or usual name for the alleged ingredient based on a draft non-binding FDA guidance document. Compl. ¶ 19.

20.     Plaintiff's extensive citation of federal materials is not surprising as federal issues are at the core of her claim. Indeed, Plaintiff's claims "clearly implicate federal law" and "Plaintiff[] cannot prevail unless [she] allege[s] and ultimately prove[s] a violation of federal law." *H.R. ex rel. Reuter v. Medtronic, Inc.*, 2014 WL 554454, at *4 (S.D. Ohio Feb. 13, 2014); Compl. ¶ 15 (acknowledging same; asserting that "*conduct that violates the FDCA is actionable under state law if it also violates state consumer protection statutes.*") (emphasis added). This flows from the comprehensive federal scheme for regulation of food labeling.

21.     Regulation of food labeling is in the first instance federal. *See Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1134 (D. Minn. 2012). Federal regulation of food labeling is governed by the federal Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301, *et seq*. Congress and the U.S. Food and Drug Administration ("FDA") have created a detailed, rigorous, comprehensive, and uniform system for labeling food products through the FDCA and its implementing regulations. This statutory and regulatory scheme is designed to ensure that food is safe and is labeled in a consistent manner that does not mislead consumers. *See, e.g.*, 21 U.S.C. § 341. Congress amended the FDCA through the passage of the National Labeling and

Education Act ("NLEA"), Pub. L. 101-535, to "clarify and to strengthen" the FDA's "legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." H.R. Rep. No. 101-538, at 7.  The enforcement of the federal duties at issue here is committed to the pervasive oversight of the FDA, a federal agency. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 (2001) (describing the "variety of enforcement options" available to the FDA).  By enacting the FDCA, as amended by the NLEA, Congress both recognized and reinforced a substantial federal interest in the regulation of food-labeling.

22.     The NLEA contains an express preemption provision which provides that no state "may directly or indirectly establish . . . any requirement for the labeling of food of the type" regulated by federal law "that is not identical to the federal requirement." 21 U.S.C. § 343-1. This express preemption provision covers federal statutes as well as labeling regulations. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). The purpose of the express preemption provision was to create uniform national standards regarding the labeling of food. *See Turek v. General Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). Thus, a plaintiff must sue for conduct that violates the FDCA or face dismissal because of express preemption.  A plaintiff is not suing for conduct that violates the FDCA (and thus her claims are expressly preempted) when she seeks to impose a requirement that is "different from or in addition to" the federal requirements. *See In re Medtronic, Inc., Sprint Fidelis Leads Products Liab. Litig.*, 623 F.3d 1200, 1205 (8th Cir. 2010) ("Where a federal requirement permits a course of conduct and the state makes it obligatory, the state's requirement is in addition to the federal requirement and thus is preempted."); *Kinetic Co., Inc. v. Medtronic, Inc.*, 2011 WL 1485601, at *3 (D. Minn. Apr. 19, 2011) (quoting 21 U.S.C. § 360(k)) ("Because there is no such requirement under the

FDCA, Kinetic is seeking to use state law to impose requirements on Medtronic that are 'different from, or in addition to,' the requirements imposed by the FDCA.").

23.     The NLEA's express preemption provision, similar to the Medical Device Amendment to the FDCA, has a narrow exception for claims that "'parallel,' rather than add to, federal requirements." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008). To be "parallel," a state-law requirement must be "identical" to a federal requirement. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996).  Although a plaintiff suing for alleged damages caused by alleged mislabeling of food products may attempt to recite a cause of action recognized under state law, to plead and prove a non-preempted "parallel" claim, "[t]he plaintiff must be suing for conduct that violates the FDCA [] or else his claim is expressly preempted." *Bryant v. Medtronic, Inc.*, 623 F.3d 1200, 1204 (8th Cir. 2010).  Thus, the resolution of Plaintiff's claims necessarily "implicate[s] significant federal issues" and "turn[s] on substantial questions of federal law." *Grable*, 545 U.S. at 312; *accord Bowdrie v. Sun Pharm. Indus.*, 909 F. Supp. 2d 179 (E.D.N.Y. 2012) (denying motion to remand and holding that a state-law negligence and product-liability action against generic drug manufacturers "necessarily raises a federal question" because the plaintiffs were required to prove a violation of the "ongoing federal duty of sameness" under the Hatch-Waxman Act).

24.     Furthermore, the federal issues at the core of Plaintiff's claims are disputed.  Most fundamentally, at issue is whether Plaintiff can plead and prove a violation of the FDA's common or usual name requirement and whether a purported violation of a draft FDA guidance document expressly made <u>not</u> a requirement by a binding federal regulation establishes a federal regulatory violation.  *See* 21 C.F.R. § 10.115(d) ("Are you or FDA required to follow a guidance document?  No. Guidance documents do not establish legally enforceable rights or

responsibilities. They do not legally bind the public or FDA."). Even assuming such a claim is not preempted, which Whole Foods disputes, these central elements of Plaintiff's claims are in dispute.

25.     The disputed federal issues are substantial. As the Eighth Circuit Court of Appeals concluded in *Pet Quarters*, there can be no question that the disputed federal issue raised by Plaintiff's purported state law claims is substantial "because it directly implicates actions taken by [federal agencies]. . . and the rules governing [them]." *Pet Quarters*, 559 F.3d 779; *see also Mikulski*, 501 F.3d at 570 (the involvement of a federal agency, such as the involvement of the FDA in the regulation of food labeling, is a factor supporting the substantiality of the federal interest in a case). Furthermore, resolution of this dispute could affect the outcome in numerous other cases. *Id.* Further, "[t]he federal issues involved go far beyond simply incorporating a federal standard into a state law cause of action [because] Plaintiffs' causes of action implicate the labeling requirements for . . . manufacturers nationwide." *Bowdrie*, 909 F.Supp. 2d at 184. As in *Bowdrie*, the instant case implicates labeling requirements, albeit for food labeling, which will have nationwide effects. Finally, the question whether Plaintiff can establish a violation of a federal duty that parallels his state-law claims is likely to be "dispositive of this case." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 571 (6th Cir. 2007); *see, e.g., Landers v. Morgan Asset Mgmt., Inc.*, 2009 WL 962689, at *8 (W.D. Tenn. 2009) (finding a substantial federal question where plaintiffs' negligence claim necessarily "depends on a finding that the Defendants did not meet the standard of care imposed by federal . . . law").

26.     The existence of a substantial disputed federal issue is reinforced in the context of the specific claim here by the recent nearly uniform invocation by courts of the primary

jurisdiction doctrine to stay or dismiss claims challenging evaporated cane juice claims in deference to the FDA. As noted above, this action is virtually identical to numerous other actions challenging the use of "evaporated cane juice" based on the FDA's non-binding draft guidance. When the actions were initially filed, some but probably a minority of courts considering the issue stayed or dismissed evaporated cane juice claims based on the primary jurisdiction doctrine. *E.g., Hood v. Wholesoy*, 2013 WL 3553979, *4-5 (N.D. Cal. July 12, 2013) (deciding before Notice that evaporated cane juice claims should be stayed under primary jurisdiction doctrine). On March 5, 2014, however, the FDA published a Notice that it would re-open the period for submission of comments regarding the draft guidance on evaporated cane juice. 79 Fed. Reg. 12,507 (March 5, 2014). The FDA received submissions from multiple stakeholders identifying a host of complex issues that must be resolved. On December 24, 2014, the FDA published an Update to Industry notifying the public and the courts that the agency is still "evaluating the submitted comments and considering appropriate actions." FDA Center for Food Safety and Applied Nutrition, Update for Industry on Certain Proposed Rules, available at http://www.fda.gov/food/ingredientspackaginglabeling/labelingnutrition/ucm427968.htm. After the Notice, courts in the vast majority of cases have stayed or dismissed evaporated cane juice claims based on the primary jurisdiction doctrine in deference to the FDA. *E.g., Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 6657809, *6 (N.D. Cal. Nov. 21, 2014) (staying Plaintiff's evaporated cane juice claims based on primary jurisdiction doctrine "pending the FDA's issuance of final guidance."); *Thomas v. Costco Wholesale Corporation* 2014 WL 5872808, *6 (N.D.Cal. Nov. 12, 2014) (staying Plaintiff's evaporated cane juice claims based on primary jurisdiction "until the FDA issues final guidance after the ECJ comment period ends."); *Saubers v. Kashi Co.*, 39 F.Supp.3d 1108, 1113 (S.D. Cal. 2014) (dismissing Plaintiffs' evaporated cane

juice claims without prejudice to Plaintiffs filing an amended pleading "after the FDA has released its final guidance regarding the common or usual name for the sweetener often referred to as 'evaporated cane juice.'").

27.     The reasons underlying these primary jurisdiction decisions support the existence of a substantial disputed federal issue at the core of Plaintiff's claims. "Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Taradejna*, 909 F. Supp. 2d at 1134. Although the contours of primary jurisdiction are not fixed by a precise formula, the doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* "Agency expertise is the most common reason that courts apply the doctrine of primary jurisdiction." *Id.* "[C]ourts apply the doctrine to promote uniformity and consistency within the particular field of regulation." *Id.*

28.     The court in *Hood v. Wholesoy* explained the reasons for finding the primary jurisdiction doctrine appropriate in the context of evaporated cane juice claims:

> The FDA has regulatory authority over food labeling. The FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers. Food labeling enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in administration. Congress amended the FDCA through the passage of the Nutrition Labeling and Education Act (NLEA) to clarify and to strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. No state may directly or indirectly establish any requirement for the labeling of food that is not identical to the [FDCA].

> With respect to "evaporated cane juice," the Draft ECJ Guidance on which Plaintiff relies says expressly that it is not a "legally enforceable" standard, but only a suggestion. Given that statement, it is unclear why FDA subsequently has issued two warning letters citing that guidance. At a minimum, this indicates to the Court that the FDA's position is not settled. So far as it appears, FDA has not yet set a uniform enforcement standard. Thus, determination of Plaintiff's claim would require the Court to decide an issue committed to the FDA's expertise without a clear indication of how FDA would view the issue.

*Wholesoy*, 2013 WL 3553979, at *4-5.l. July 12, 2013).  And the court in *Kashi Co.* explained

the importance of the FDA's Notice:

> Plaintiffs' claims rely heavily, if not entirely, on the premise that the FDA has
> concluded that "evaporated cane juice" is not the common or usual name for any
> sweetener. Plaintiffs' claims each invoke the FDA's informal guidance to support
> their contention that the Kashi products identified in the amended pleading are
> misbranded and in violation of the FDA's food labeling requirements.
> Consequently, the FDA's articulation of its considered view on this matter will
> undoubtedly affect issues being litigated in this action. Because the FDA has been
> actively revisiting its draft guidance since at least March 5, 2014—indicating that
> the agency's expert opinion is still being developed—application of the primary
> jurisdiction doctrine is favored.

39 F.Supp.3d 1108, 1112 (S.D.Cal. 2014).  Indeed, the FDA's Notice has been a key factor in

most, if not all, decisions deferring to the FDA.  *See, e.g., Swearingen v. Santa Cruz National,

Inc.*, 2014 WL 1339775, *3 (N.D. Cal. April 2, 2014) ("[C]ourts find it particularly appropriate

to defer to an agency when, as is true here, the agency is in the process of making a

determination on a key issue in the litigation."); *Reese v. Odwalla*, 30 F.Supp.3d 935 (N.D. Cal.

2014) ("In light of the fact that [the] FDA has revived its review of the [evaporated cane juice]

issue, the Court finds that the FDA's position on the lawfulness of the use of that term is not only

… 'not settled,' it is also under active consideration by the FDA.  Any formal pronouncement by

the FDA in connection with that process almost certainly would have an effect on the issues in

litigation here.").

     29.    Moreover, the near uniform treatment of evaporated cane juice claims by courts

with the invocation of the primary jurisdiction doctrine demonstrates the claims are capable of

resolution without disrupting the federal-state balance.  Due to the confluence of factors

including the FDA action, evaporated cane juice claims present a uniquely significant federal

interest even greater than other types of food labeling claims.   This is acknowledged by courts

by their near uniform invocation of the primary jurisdiction in this specific context.  Thus, the

finding of federal question jurisdiction here would be narrowly limited to the distinct facts at issue. Therefore, no disruption of the federal-state balance would result.

30.     Accordingly, this Court has federal question jurisdiction under 28 U.S.C. § 1331, and this case is removable under 28 U.S.C. § 1441.

## Additional Information

31.     This Notice of Removal is being filed in the United States District Court for the Eastern District of Missouri, Eastern Division, as this is the district court within which the 22nd Judicial Circuit Court action is pending.  28 U.S.C. § 1441(a).

32.     Promptly upon the filing of this Notice of Removal, Defendant shall electronically file a Notice of Filing of Removal, with a copy of the Notice of Removal, with the 22nd Judicial Circuit Court of the City of St. Louis, State of Missouri, and will serve a copy thereof on counsel of record for Plaintiff, pursuant to 28 U.S.C. § 1446(d).

33.     Pursuant to Local Rule 2.03, Defendant will file proof with this Court that the Notice of Filing of Removal was electronically filed with the 22nd Judicial Circuit Court of the City of St. Louis, State of Missouri.

34.     By filing this Notice of Removal, Defendant does not waive any claims or defenses available at law, in equity or otherwise.

WHEREFORE, Defendant respectfully requests that the above-referenced civil action proceed in the United States District Court for the Eastern District of Missouri, Eastern Division, as an action properly removed thereto.

DATED: June 25, 2015

SEYFARTH SHAW LLP

By: */s/ Michael W. Kopp*_____
Michael W. Kopp (SBN 63944)
400 Capitol Mall
Sacramento, CA 95814
Telephone: (916) 448-0159
Facsimile: (916) 558-4839
mkopp@seyfarth.com

Jay W. Connolly (*pro hac vice to be filed*)
Joseph J. Orzano (*pro hac vice to be filed*)
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549
jconnolly@seyfarth.com
jorzano@seyfarth.com

Attorneys for Defendant
WHOLE FOODS MARKET GROUP, INC.